**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

KENNETH LENK,

        Plaintiff,

    v.

MONOLITHIC POWER SYSTEMS
INCORPORATED; MAURICE
SCIAMMAS; AND SACKS, RICKETTS,
AND CASE LLP,

        Defendants.

Case No. 19-cv-03791-BLF

**ORDER GRANTING MOTION TO DISMISS FILED BY DEFENDANTS MPS AND SCIAMMAS, WITHOUT LEAVE TO AMEND; DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND; AND REQUESTING STATUS REPORT FROM DEFENDANT SRC**

[Re: ECF 31, 51]

Plaintiff Kenneth Lenk ("Lenk") filed this lawsuit on March 26, 2018, asserting claims against his former employer, Monolithic Power Systems, Incorporated ("MPS"); his former supervisor at MPS, Maurice Sciammas ("Sciammas"); and the law firm that represented MPS and Sciammas in prior litigation between the parties, Sacks, Ricketts & Case LLP ("SRC"). Before the Court are a motion to dismiss the complaint filed by Defendants MPS and Sciammas pursuant to Federal Rule of Civil Procedure 12(b)(6), and a motion for leave to amend filed by Plaintiff Kenneth Lenk ("Lenk") pursuant to Federal Rule of Civil Procedure 15. The motion to dismiss has been taken under submission for decision without oral argument. *See* Order Submitting Motion, ECF 58. The motion for leave to amend was not noticed for hearing, and the Court finds that motion suitable for decision without oral argument. *See* Civ. L.R. 7-1(b). For the reasons discussed below, the motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND[1], and the motion for leave to amend is DENIED.

---

[1] While not all grounds for dismissal asserted in the motion are meritorious, the motion presents bases for dismissal of all claims without leave to amend.

SRC has not responded to the complaint. SRC SHALL file a Status Report on or before February 24, 2020.

## I. BACKGROUND

This is the third lawsuit that Lenk, proceeding *pro se*, has filed against his former employer, MPS. The Court summarizes the earlier lawsuits before addressing the facts alleged in the present suit.

*Lenk I, Case No. 15-cv-01148-NC*

In March 2015, Lenk filed suit against MPS in the United States District Court for the Northern District of California ("*Lenk I*"), alleging wrongful constructive termination of his employment and related claims under federal and state law. *See Lenk v. Monolithic Power Systems, Inc.*, Case No. 15-cv-01148-NC. He filed a first amended complaint as of right and a second amended complaint with leave of court. *See* FAC, ECF 35 in *Lenk I*; SAC, ECF 54 in *Lenk I*.

Lenk alleged that he began working for MPS as a marketing director in March 2012, reporting to Sciammas. SAC ¶ 8, ECF 54 in *Lenk I*. Lenk claimed that he enjoyed normal employment until early 2013, when he began to suffer adverse employment actions, including non-payment of a bonus, non-payment of business expenses, harassment, and reduction of duties. *Id.* ¶¶ 9-10. Lenk believed he was constructively discharged as of March 14, 2013. *Id.* ¶ 11. Magistrate Judge Nathanael M. Cousins granted MPS's motion to dismiss the SAC pursuant to Rule 12(b)(6), with leave to amend in part and without leave to amend in part. *See* Order Granting in Part Defendant's Motion to Dismiss, ECF 70 in *Lenk I*; Order Granting Defendant's Motion to Dismiss as to Lenk's State Law Claims, ECF 80 in *Lenk I*. Judge Cousins thereafter granted MPS's motion to dismiss Lenk's third amended complaint without leave to amend and entered judgment for MPS and against Lenk in March 2016. *See* Order Granting Motion to Dismiss the TAC, ECF 87 in *Lenk I*; Judgment, ECF 88 in *Lenk I*.

*Lenk II, Case No. Case No. 16-cv-02625-BLF*

In May 2016, Lenk filed a second suit against MPS in the United States District Court for the Northern District of California ("*Lenk II*"), again alleging wrongful constructive discharge.

*See Lenk II.* The second suit also named as a defendant Lenk's former supervisor, Sciammas. *See id.* Lenk alleged that he was hired by MPS as a marketing manager in March 2012, and that he experienced normal employment through December 2012. *See* Compl. ¶¶ 8-11, ECF 1 in *Lenk II.* He claimed that in December 2012, he filed a complaint against his former employer, Freescale Semiconductor, after which "there was an abrupt and significant change of attitude from MPS and manager Sciammas toward Plaintiff." *Id.* ¶¶ 13-15. Lenk alleged that he began to suffer adverse employment actions, including non-payment of a bonus, non-payment of business expenses, harassment by Sciammas, and reduction in duties. *Id.* ¶ 17. Those adverse actions allegedly culminated in Lenk's constructive discharge. *Id.* ¶ 35. *Lenk II* initially was assigned to Judge Cousins, but after Lenk declined to consent to magistrate judge jurisdiction, the case was reassigned to the undersigned judge. *See* Order Reassigning Case, ECF 5 in *Lenk II.*

Lenk asserted two claims against MPS and Sciammas, the first for violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and the second for violation of 42 U.S.C. § 1981. *See* Compl., ECF 1 in *Lenk II.* MPS filed a counterclaim seeking repayment of a $34,000 signing bonus that Lenk was contractually obligated to return if he left the company within two years. *See* Counterclaim, ECF 28 in *Lenk II.* Both sides filed motions to dismiss, which the Court referred to Judge Cousins for report and recommendation ("R&R"). *See* Order Referring Defendants' Motion to Dismiss, ECF 54 in *Lenk II*; Order Referring Plaintiff's Motion to Dismiss Defendant's Counterclaim, ECF 67 in *Lenk II.*

Judge Cousins recommended that this Court dismiss the complaint without leave to amend as barred by *res judicata* and decline to exercise supplemental jurisdiction over the counterclaim. *See* R&R on Defendants' Motion to Dismiss, ECF 71 in *Lenk II*; R&R to Dismiss Counterclaim, ECF 81 in *Lenk II.* The Court adopted Judge Cousins' R&Rs. *See* Orders Adopting R&Rs, ECF 76 & 82 in *Lenk II.* The Court entered judgment in favor of MPS and Sciammas and against Lenk. *See* Judgment, ECF 84 in *Lenk II.* The Court also granted in part MPS's motion for attorneys' fees and costs in the amount of $17,665.74. *See* Order Granting In Part, ECF 124 in *Lenk II.*

On appeal, the United States Court of Appeals for the Ninth Circuit affirmed the judgment, stating that "[t]he district court properly dismissed Lenk's action on the basis of claim preclusion

because the claims were raised or could have been raised in a prior action between the parties or those in privity with them, and the prior action resulted in a final judgment on the merits." *Lenk v. Monolithic Power Sys., Inc.*, 754 F. App'x 554, 556 (9th Cir. 2018). The Ninth Circuit also found that "[t]he district court did not abuse its discretion by denying leave to amend the complaint because amendment would have been futile." *Id.*

*Lenk III (present case), Case No. 19-cr-03791-BLF*

On March 26, 2018, Lenk filed the present suit in the United States District Court for the District of Arizona ("*Lenk III*"). *See* Compl., ECF 1. He sues MPS and Sciammas, and the law firm that represented them in *Lenk I* and *Lenk II*, SRC. *See id.* The Arizona district court granted Defendants' motion to change venue and transferred the case to the Northern District of California. *See* Order Granting Motion to Change Venue, ECF 22. The case initially was assigned to Magistrate Judge Susan van Keulen, but after Lenk declined to consent to magistrate judge jurisdiction it was randomly reassigned to this Court. *See* Order Reassigning Case, ECF 27.

Lenk filed a Motion for Recusal under 28 U.S.C. § 455, asserting bias of this Court based on: past legal services provided to MPS by the undersigned's spouse; Lenk's request that the Department of Justice investigate the undersigned; the undersigned's past rulings against Lenk; and the undersigned's alleged general bias against *pro se* litigants. *See* Motion for Recusal, ECF 39. This Court directed the Clerk to reassign the recusal motion to another district judge. *See* Order Directing Clerk, ECF 40. The motion was reassigned to Judge Lucy H. Koh, who denied it. *See* Order Denying Plaintiff's Motion for Recusal, ECF 46.

In the present case, Lenk once again asserts that he was wrongfully constructively discharged from his employment with MPS. *See* Compl. ¶ 18, ECF 1. He repeats the now-familiar allegations that he was hired by MPS in March 2012, experienced normal employment through December 2012, and experienced "an abrupt and significant change of attitude from MPS and manager Sciammas" after filing a complaint against his former employer, Freescale Semiconductor. Compl. ¶¶ 9-13. At that point, Lenk allegedly began to suffer adverse employment actions, including non-payment of a bonus and non-payment of business expenses, which ultimately culminated in his constructive discharge. Compl. ¶¶ 18-19.

4

Lenk also adds new allegations against MPS, Sciammas and SRC based on their litigation conduct in *Lenk I* and *Lenk II*. According to Lenk, Defendants "deprived Lenk of his rights for a fair and just recovery to the retaliatory actions by MPS/Sciammas in violation of Title VII and 42 USC 1981." Compl. ¶ 22, ECF 1. MPS, Sciammas, and SRC allegedly acted unlawfully throughout the litigation of *Lenk I* and *Lenk II*, for example by avoiding service of process and committing fraud on the court. Compl. ¶¶ 25-53. Lenk contends that MPS sought attorneys' fees in *Lenk II* for the purpose of harming him financially and dissuading other employees from asserting their rights. Compl. ¶ 55. Lenk claims that "[t]he delay tactics and actions by Defendant(s) have produced two judgments against Lenk." Compl. ¶ 70. "These judgments appear in background checks and used for hiring decisions." *Id.*

Lenk's complaint contains the following claims: (1) Title VII – Retaliation (against MPS); (2) Deprivation of Civil Rights under 42 U.S.C. § 1981 (against MPS, Sciammas, and SRC); (3) Deprivation of Civil Rights under 42 U.S.C. § 1983 (against MPS, Sciammas, and SRC); (4) Conspiracy to Interfere with Civil Rights under 42 U.S.C. § 1985 (against MPS, Sciammas, and SRC); and (5) Intentional and Negligent Infliction of Emotional Distress (against MPS, Sciammas, and SRC). Compl., ECF 1.

MPS, Sciammas, and SRC each executed a waiver of service of summons. *See* Notice of Waiver, ECF 15. MPS and Sciammas have filed a motion to dismiss pursuant to Rule 12(b)(6). *See* MTD, ECF 31. Lenk has filed opposition, and MPS and Sciammas have filed a reply. *See* Opp. re MTD, ECF 54; Reply re MTD, ECF 56. SRC has not joined in the motion to dismiss, and the docket does not reflect any response to the complaint by SRC. SRC's apparent failure to respond to the complaint is puzzling, as SRC has appeared in this case, moved to change venue, and opposed Lenk's motion for leave to amend the complaint. That parties SHALL file a status report re SRC on or before February 24, 2020.

After the motion to dismiss was filed, Lenk filed a motion for leave to amend the complaint along with a proposed first amended complaint ("Proposed FAC"). *See* MLTA, ECF 51; Proposed FAC, ECF 52. Lenk did not include the word "proposed" in the caption of the Proposed FAC, and the Clerk erroneously filed the pleading as a First Amended Complaint. *See*

5

ECF 52. The Clerk shall correct the docket to reflect that ECF 52 is a *Proposed* First Amended Complaint. The Proposed FAC reasserts the five claims alleged in the complaint, and adds a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, a claim for negligence and unjust enrichment, and a new section titled "Exemplary Damages." *See* Proposed FAC, ECF 52. The Proposed FAC also adds numerous allegations of asserted bias on the part of this Court. *See* Proposed FAC ¶¶ 199-210, 269-78, ECF 52. Lenk made those same allegations in his motion for recusal under 28 U.S.C. § 455, which has been denied, and they are not addressed in this order. MPS and Sciammas have filed opposition to Lenk's motion for leave to amend, and SRC has filed a joinder in the opposition. *See* Opp. to MLTA, ECF 53; Joinder, ECF 55. Lenk has filed a reply. *See* Reply re MLTA, ECF 57.

## II. DISCUSSION

As stated above, Defendants MPS and Sciammas ("Moving Parties") seek dismissal of the complaint and Lenk seeks leave to file a first amended complaint. Lenk requires leave of court for amendment, because he missed the statutory deadline to amend as of right. "A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Lenk filed his motion for leave to amend more than twenty-one days after filing proof of waiver of service and more than twenty-one days after the motion to dismiss was filed. *See* Notice of Waiver, ECF 15; MTD, ECF 31; MLTA, ECF 51. Consequently, he "may amend [his] pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Lenk requests that the Court accept his Proposed FAC and terminate the motion to dismiss as moot. *See* Opp. to MTD at 4-5, ECF 54. In the Court's view, the more appropriate course is to address the motion to dismiss and, if the complaint is subject to dismissal, to consider the Proposed FAC as a proffer of additional facts Lenk could allege if granted leave to amend. The Court therefore begins its analysis by evaluating Moving Parties' motion to dismiss, which as stated above is granted. The Court then considers whether the motion to dismiss should be

granted with or without leave to amend. And finally, the Court considers Lenk's motion for leave to amend to add new claims.

### A. Motion to Dismiss

#### 1. Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When evaluating a Rule 12(b)(6) motion, the district court must consider the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice. *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

#### 2. Analysis

Moving Parties seek dismissal of the complaint on multiple grounds, arguing that: (1) the complaint does not meet the requirements of Federal Rule of Civil Procedure 8(a); (2) the complaint is barred by *res judicata*; (3) the claims are barred by collateral estoppel; (4) Claim 1 fails to state a claim against MPS for violation of Title VII; (5) Claims 2-4 fail to state a claim for violation of Lenk's civil rights; (6) Claims 2-5 are based on litigation conduct and therefore are barred under California's litigation privilege; (7) Claim 5 for infliction of emotional distress fails to allege egregious misconduct; (8) all claims are barred by the applicable statutes of limitations; and (9) Lenk's claims cannot be asserted against Sciammas as a matter of law.

Lenk does not address the majority of these arguments in his opposition. *See generally*, Opp., ECF 54. Instead, Lenk asserts that the Court should accept his Proposed FAC and terminate

the motion to dismiss as moot. *See id.* at 4. As discussed above, Lenk is not entitled to amend his pleading without leave of court. The operative pleading addressed by the motion to dismiss is Lenk's original complaint. The Court will, however, consider the Proposed FAC as a proffer of additional facts Lenk could add to his pleading if granted leave to amend.

Lenk argues that his complaint meets the Rule 8(a) standards required in the District of Arizona, but that amendment is required to comply with "the higher pleading standards of California." *See* Opp. at 2, ECF 54. The Rule 8(a) federal pleading standard applies in all federal district courts. Accordingly, this argument is without merit.

Lenk suggests that the motion to dismiss is untimely, arguing that "Defendant's 1 1/2 year delay in raising this motion to dismiss is inconsistent with FRCP 11(b)(1)," and that Defendants "intend to profit by delaying/interfering with Plaintiff's re-employment." Opp. at 4, ECF 54. Moving Parties point out that while *Lenk III* was filed in early 2018, the Arizona district court did not rule on Lenk's motion to proceed *in forma pauperis* until October 2018, and service of process was not effected until December 2018. *See* Order Granting IFP, ECF 9; Notice of Waiver, ECF 15. Once served, Defendants moved to change venue in February 2019, and the Arizona district court granted that motion in June 2019. *See* Motion to Change Venue, ECF 16; Order Granting Motion to Change Venue, ECF 22. The case was transferred to the Northern District of California in July 2019, and Moving Parties filed the present motion to dismiss in August 2019. *See* Transfer, ECF 23; MTD, ECF 31. On this record, the Court in the exercise of its discretion accepts the motion to dismiss as timely.

Lenk requests that if the Court proceeds with the motion to dismiss, he be given an opportunity to file a motion to transfer the complaint back to the District of Arizona pursuant to 28 U.S.C. § 1404(a). This Court declines to defer ruling on the motion to dismiss pending Lenk's filing of § 1404(a) motion. The Court notes that it is highly unlikely that such a motion would be granted. The Arizona district court already has determined that the Northern District of California is the more appropriate venue, and this Court agrees with the reasoning set forth in the Arizona district court's decision. Lenk has not articulated any new circumstances that would transferring the case back to the District of Arizona.

Turning to the motion to dismiss the complaint, the Court addresses Moving Parties' arguments in turn.

### a. Rule 8(a)

Moving Parties argue that the complaint should be dismissed pursuant to Federal Rule of Civil Procedure 8(a). Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of that requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). "To meet this requirement, the Supreme Court has held that an 'entitlement to relief' requires 'more than labels and conclusions. . . . Factual allegations must be enough to raise a right to relief above a speculative level.'" *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

Moving Parties contend that Lenk's complaint does not satisfy Rule 8(a) because it "is devoid of sufficient factual matter to state any claim that is plausible on its face." MTD at 9, ECF 31. However, the single paragraph of the motion addressing Rule 8(a) does not identify any specific pleading deficiencies. Thus, while the Court ultimately agrees with Moving Parties' characterization of the complaint, the Court does so based on Moving Parties' other arguments, addressed below.

### b. *Res Judicata*

Moving Parties argue that all claims in the complaint are barred by the doctrine of *res judicata*. "Res judicata, or claim preclusion, prohibits lawsuits on any claims that were raised or could have been raised in a prior action." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (quotation marks and citation omitted). "Res judicata applies when there is: (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." *Id.* (quotation marks and citation omitted). "The central criterion in determining whether there is an identity of claims between the first and second adjudications is whether the two suits arise out of the same transactional nucleus of facts." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) (internal quotation marks and citation omitted).

Claim 1 asserts retaliation in violation of Title VII, Claims 2-4 assert federal civil rights violations, and Claim 5 asserts intentional and negligent infliction of emotional distress. All of these claims are based in part on the alleged constructive discharge litigated in *Lenk I* and *Lenk II*. *See, e.g.,* Compl ¶¶ 9-21, 84, 92, 102, 108, 116. However, as Lenk points out in his opposition, the claims also are based in part on Defendants' post-discharge litigation conduct. For example, Lenk asserts that Ms. Case, an attorney with SRC, "made several attempts to discredit Plaintiff in front of the Honorable Judge Nathanael Cousins" in *Lenk I*. Compl. ¶ 25. In *Lenk II*, MPS, Sciammas, and SRC allegedly "acted to interfere with Lenk's rights to obtain a fair and just resolution to his EEOC ( and 1981) action." Compl. ¶ 26. Lenk alleges that Defendants delayed adjudication of *Lenk II* by avoiding service of process and committing fraud on the court. Compl. ¶¶ 25-53. All of these allegations are incorporated into Claims 1-5. Compl. ¶¶ 88, 96, 105, 111. In addition, Claim 3 alleges that Defendants' assertion of the *res judicata* doctrine in *Lenk II* was done to deprive Lenk of his federal rights under Title VII and 42 U.S.C. § 1981. Compl. ¶ 97. Claim 5 alleges that Defendants' request for attorneys' fees in *Lenk II* was done intentionally to inflict emotional distress on Lenk. Compl. ¶ 115.

Lenk's claims based on Defendants' post-discharge litigation conduct do not arise out of the same transactional nucleus of facts as his claims based on the constructive discharge itself. Consequently, the identity of claims requirement for application of *res judicata* is not met. Moving Parties assert that *res judicata* applies because Lenk could have sought leave to amend his pleadings in the prior actions to add claims based on Defendants' litigation conduct. The authorities cited by Moving Parties do not support that assertion. In *Quinto v. JPMorgan Chase Bank*, the district court found that the plaintiff's new claims under California Civil Code §§ 2932.5 and 2934a arose from the same foreclosure process and the same foreclosure documents that formed the basis for claims litigated in the prior action. *Quinto v. JPMorgan Chase Bank*, No. 11-CV-02920-LHK, 2011 WL 6002599, at *7 (N.D. Cal. Nov. 30, 2011). The district court also determined that the plaintiff could have raised the new claims in the prior action, as the plaintiff was given an opportunity to file an amended complaint and a Rule 60(b) motion in the prior action. *See id.* at 8. The facts of *Quinto* are distinguishable from those in the present case, in

which Lenk's current claims based on litigation conduct do not arise out of the same facts as his claims based on constructive discharge. Moving Parties have not cited a case applying *res judicata* under similar circumstances.

The motion to dismiss based on *res judicata* is DENIED.

### c.  Collateral Estoppel

Moving Parties argue that collateral estoppel prevents Lenk from asserting that he was wrongfully constructively terminated from MPS. "The doctrine of collateral estoppel bars the relitigation of issues that were resolved in a prior proceeding, even if the later suit involves a different cause of action." *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1399 (9th Cir. 1992). "To foreclose relitigation of an issue under collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992).

Applying this doctrine, the Court agrees that Lenk is precluded from asserting in this lawsuit that he was wrongfully constructively discharged, as that issue was actually litigated in *Lenk I* and *Lenk II*, and the determination of the issue was necessary to the judgments in those cases. As discussed above, Lenk's current claims are not based wholly on Lenk's allegations of constructive discharge, but are based in part on Defendants' post-discharge conduct during litigation of *Lenk I* and *Lenk II*. Accordingly, application of collateral estoppel does not defeat those claims entirely. However, the collateral estoppel effect of the determinations in *Lenk I* and *Lenk II* are discussed below in the context of evaluating whether Lenk has pled the elements of his asserted claims.

### d.  Claim 1 - Failure to State a Claim

Moving Parties contend that Claim 1, asserting that MPS retaliated against Lenk in violation of Title VII, fails to state a claim upon which relief may be granted. To establish a claim of retaliation under Title VII, "a plaintiff must prove that (1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link

between the plaintiff's protected activity and the adverse employment action." *Poland v. Chertoff*, 494 F.3d 1174, 1179-80 (9th Cir. 2007).

### i. Protected Activity

Lenk alleges that he began to suffer adverse employment actions after he filed a lawsuit against his prior employer, Freescale Semiconductor, in December 2012. Compl. ¶¶ 10-15. He claims that MPS's retaliation against him continued after his constructive discharge and throughout litigation of *Lenk I* and *Lenk II*. Compl. ¶¶ 22-78. These allegations are incorporated into Claim 1 for violation of Title VII. Compl. ¶ 79. Accordingly, the Court understands Lenk to be alleging retaliation based on his 2012 lawsuit against Freescale Semiconductor.

### ii. Adverse Employment Action

Lenk alleges that MPS retaliated by constructively discharging him. Compl. ¶ 82. As discussed above, Lenk is collaterally estopped from asserting constructive discharge. Lenk also alleges that MPS engaged in post-discharge retaliatory acts such that he "continues to suffer retaliation." Compl. ¶ 83. Those acts are enumerated in the complaint's general allegations, which recite a litany of alleged wrongful conduct on the part of MPS during MPS's litigation of *Lenk I* and *Lenk II*. That conduct includes alleged attempts to discredit Lenk in front of Judge Cousins in *Lenk I*; filing a motion to relate cases to delay adjudication of Lenk's claims; failure to waive service of process in *Lenk II* even though a waiver was executed in *Lenk I*; avoidance of Lenk's process server; filing motions to harass Lenk; filing a motion for attorneys' fees to harm Lenk financially; and obtaining two court judgments against Lenk. Compl. ¶¶ 25-72. Lenk alleges that "Defendant(s) actions have killed Lenk's career." Compl. ¶ 73. He alleges further that "Defendant(s) actions (including but not limited to the judgments) inhibiting Lenk from a fair and just resolution for his Title VII (and 42) claims, which put a final nail in his career coffin." Compl. ¶ 74. Lenk notes that the judgments in *Lenk I* and *Lenk II* "appear in background checks and used for hiring decisions." Compl. ¶ 70.

The scope of Title VII's anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). In *Burlington*, the Supreme Court cited several examples of cases in

which conduct outside the workplace could constitute retaliation under Title VII. *See id.* at 63-64.
Those examples included the Federal Bureau of Investigation's retaliatory refusal to investigate
death threats against and agent and his wife, and an employer's filing of false criminal charges
against a former employee who complained about discrimination. *See id.* Moreover, "[a] plaintiff
may seek relief for retaliatory actions taken after her employment ends if the alleged
discrimination is related to or arises out of the employment relationship." *Hashimoto v. Dalton*,
118 F.3d 671, 675 (9th Cir. 1997). However, nothing in *Burlingame, Hashimoto*, or any case cited
by Lenk suggests that Title VII may be stretched to cover conduct such as that alleged in the
present case.

In *Burlington*, the retaliation claim was brought while the plaintiff remained employed,
and the issue was whether the acts complained of – changing her job responsibilities and
suspending her without pay – could form the basis of a retaliation action even if they did not
constitute "ultimate employment decisions." *See Burlington*, 548 U.S. at 67. The Supreme Court
answered that question in the affirmative, holding that a plaintiff suing for retaliation under Title
VII must show only that "a reasonable employee would have found the challenged action
materially adverse, which in this context means it well might have dissuaded a reasonable worker
from making or supporting a charge of discrimination." *Id*. at 68 (internal quotation marks and
citation omitted). In *Hashimoto*, the plaintiff claimed that after she left her employment with the
Navy, the Navy transmitted a negative job reference to the Army in retaliation for the plaintiff's
filing of an administrative complaint alleging discriminatory conduct by her Navy supervisors.
*Hashimoto*, 118 F.3d at 673. The Ninth Circuit found that the post-employment transmittal of the
negligent reference fell within the scope of Title VII. *See id.* at 676.

These cases are distinguishable from the present case, in which the alleged "retaliatory"
conduct described by Lenk consists of ordinary actions taken in defense of a lawsuit *filed by Lenk*,
*e.g.*, filing motions and seeking favorable judgment. Defendants are not alleged to have
affirmatively transmitted a negative reference to a prospective employer, as in *Hashimoto*. While
Lenk alleges that prospective employers will see that adverse judgments in *Lenk I* and *Lenk II* in
background checks, those judgments were the result of *Lenk's* conduct in suing Defendants. Thus,

absent some case authority to the contrary, the Court concludes that Lenk cannot satisfy the element of adverse employment action by citing to MPS's conduct in defending against *Lenk I* and *Lenk II*.

### iii.     Causal Link

Finally, Lenk has not demonstrated a causal link between the alleged protected conduct – the 2012 lawsuit against Freescale Semiconductor – and MPS's litigation conduct in *Lenk I* and *Lenk II*.  It is wholly implausible that MPS's defense of two lawsuits brought by Lenk in the 2015-2017 time frame was motivated by a desire to retaliate against Lenk for Lenk's filing of a lawsuit against Freescale Semiconductor in 2012.  Lenk has not alleged any facts showing a connection between MPS and Freescale Semiconductor, or showing that MPS's conduct was motivated by anything other than the ordinary desire to defend against litigation.

### iv.     Scope of EEOC Charge

Moving Parties make the additional argument that claims regarding Defendants' post-discharge litigation conduct are outside the scope of Lenk's EEOC charge.  A Title VII claim is limited to the wrongs alleged in the complainant's EEOC charge.  *See Hua v. Donahoe*, No. CV 14-05886 DDP (JEMx), 2015 WL 9272808, at *2 (C.D. Cal. Dec. 18, 2015) ("The jurisdictional scope of a Title VII claimant's federal action is therefore limited to the scope of both the EEOC charge and the EEOC investigation." (internal quotation marks and citation omitted).  Moving Parties ask the Court to take judicial notice of Lenk's EEOC Charge No. 556-2013-00779, dated Nov. 6, 2013, and the right to sue letter on that charge.  *See* RNJ Exh. E, ECF 32.  The Court may take judicial notice of the EEOC filings or, alternatively, may consider them under the incorporation by reference doctrine.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation by reference doctrine permits a court to consider documents referenced in but not physically attached to the complaint); *Coleman v. Boeing Co.*, No. C13-1788RSL, 2014 WL 266333, at *1 n.1 (W.D. Wash. Jan. 23, 2014) (court may take judicial notice of documents filed with and by the EEOC as matters of public record).

The EEOC charge submitted by Moving Parties does not appear to be the EEOC charge upon which Lenk's current Title VII claim is based.  Lenk alleges that EEOC charge No. 556-

14

2013-00779, which is the subject of the request for judicial notice, formed the basis of the Title VII claim he asserted in *Lenk II*. Compl. ¶ 21. He alleges that his current Title VII claim is based on EEOC Charge No. 556-2018-00122. Compl. ¶ 80. That EEOC charge is not attached to the complaint or submitted by Moving Parties. Accordingly, the Court cannot determine whether Lenk's current Title VII claim exceeds the scope of the relevant EEOC charge. However, as discussed above, the Title VII claim is subject to dismissal for failure to allege sufficient facts.

The motion to dismiss is GRANTED as to Claim 1 for failure to state a claim upon which relief may be granted.

### e. Claims 2 (42 U.S.C. § 1981), 3 (42 U.S.C. § 1983), and 4 (42 U.S.C. § 1985) – Failure to State a Claim

Moving Parties argue that Claims 2, 3, and 4 – civil rights claims brought under 42 U.S.C. ¶¶ 1981, 1983, and 1985, respectively – fail to state claims upon which relief may be granted.

### i. Claim 2 – § 1981

Section 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a). "To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mercer v. Sw. Airlines Co.*, No. 13-CV-05057-MEJ, 2014 WL 4681788, at *7 (N.D. Cal. Sept. 19, 2014) (internal quotation marks and citation omitted). The plaintiff also must show intentional racial discrimination. *Id*. The complaint does not allege that Lenk is a member of a racial minority or discrimination on the basis of race. The § 1981 claim thus is subject to dismissal.

### ii. Claim 3 – § 1983

"Section 1983 is a vehicle by which plaintiffs can bring federal constitutional and statutory

15

challenges to actions by state and local officials." *Naffe v. Frey*, 789 F.3d 1030, 1035-36 (9th Cir. 2015) (internal quotation marks and citation omitted). "To state a claim under § 1983, a plaintiff [1] must allege the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law." *Id*.

As Moving Parties state in their motion, the complaint does not allege that they are state actors. To the contrary, it appears from the face of the complaint that MPS is a private company and Sciammas is a private citizen. The § 1983 claim therefore is subject to dismissal.

### iii.    Claim 4 – § 1985

In Claim 4, brought under 42 U.S.C. § 1985, Lenk alleges "obstruction of justice actions by MPS in conspiracy with Sciammas and/or SRC." Compl. ¶ 106. Section 1985 contains three subsections, each addressing a different type of misconduct. Subsection (1) addresses conduct that prevents an officer from performing duties; subsection (2) addresses conduct that prevents access to federal or state courts; and subsection (3) addresses conspiracies to deprive persons of rights or privileges. 42 U.S.C. § 1985. Claim 4 does not specify which subsection is asserted. However, Claim 4 is titled "Conspiracy to Interfere with Civil Rights." Accordingly, the Court understands Claim 4 to be asserted under § 1985(3), which addresses conspiracies to deprive persons of rights.

Section 1985(3) "prohibits conspiracies 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws[.]'" *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (quoting 42 U.S.C. § 1985(3)). "The original purpose of § 1985(3), which was passed as the Ku Klux Klan Act of 1871, was to enforce the rights of African Americans and their supporters." *Id*. Section 1985(3) has been extended "to protect non-racial groups only if 'the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or . . . Congress has indicated through legislation that the class require[s] special protection." *Id*. (internal quotation marks and citation omitted). Lenk does not allege that he belongs to a protected class. Claim 4 therefore fails to state a claim.

### iv.    Civil Rights Claims Fail to Allege Sufficient Facts

Based on the deficiencies identified above, Lenk's civil rights claims asserted under 42

U.S.C. §§ 1981, 1983, and 1985(3) are subject to dismissal for failure to allege the requisite elements of those claims. In addition, the Court finds Lenk's theory of liability under the civil rights statutes to be wholly implausible. Lenk has alleged no facts suggesting that Defendant's conduct in defending against two lawsuits brought by Lenk was motivated by a discriminatory or retaliatory animus. All of the litigation conduct described by Lenk – filing motions, seeking attorneys' fees for meritless litigation, and generally defending against the lawsuits – is perfectly ordinary. On these grounds, the motion to dismiss is GRANTED as to Claims 2, 3, and 4 for failure to state a claim upon which relief may be granted.

### f.      California's Litigation Privilege

Moving Parties argue that Claims 2-5 are barred by California's litigation privilege, which is codified at California Civil Code § 47(b). "The litigation privilege grants absolute immunity from tort liability for communications made in relation to judicial proceedings." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 599 (9th Cir. 2010) (internal quotation marks and citation omitted). "'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" *Id.* (quoting *Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990)).

Moving Parties' reliance on § 47(b) is misplaced with respect to Claims 2, 3, and 4, because the privilege does not bar claims asserted under federal civil rights statutes. *See Kimes v. Stone*, 84 F.3d 1121, 1127 (9th Cir. 1996) (privilege does not bar § 1983 claims); *I.K. ex rel. E.K. v. Sylvan Union Sch. Dist.*, 681 F. Supp. 2d 1179, 1204 (E.D. Cal. 2010) ("It is axiomatic that conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law." (internal quotation marks, citation, and alteration omitted)).

However, the Court agrees that § 47(b) bars Claim 5 for intentional and negligent infliction of emotional distress. To the extent Claim 5 is not based on the alleged constructive discharge, which Lenk is collaterally estopped from relitigating, it is based on Defendants' conduct in litigating *Lenk I* and *Lenk II*. Claim 5 therefore falls squarely within the litigation privilege.

1    The motion to dismiss is GRANTED as to Claim 5 based on collateral estoppel and

2    California's litigation privilege.

3                    **g.    Emotional Distress**

4    Moving Parties also argue that Claim 5, for intentional and negligent infliction of

5    emotional distress, fails to state a claim.  The elements of a claim for intentional infliction of

6    emotional distress under California law are:  "(1) extreme and outrageous conduct by the

7    defendant with the intention of causing, or reckless disregard of the probability of causing,

8    emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual

9    and proximate causation of the emotional distress by the defendant's outrageous conduct."

10   *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009) (internal quotation marks and citation

11   omitted).  As Moving Parties point out, Lenk has not alleged extreme and outrageous conduct that

12   would give rise to liability for intentional infliction of emotional distress.  The conduct described

13   in the complaint constitutes ordinary litigation practice in defense of a lawsuit.

14   With respect to a claim for negligent infliction of emotional distress, California recognizes

15   "two theories of recovery: the bystander theory and the direct victim' theory."  *Fluharty v.*

16   *Fluharty*, 59 Cal. App. 4th 484, 490 (1997), *as modified on denial of reh'g* (Dec. 16, 1997).

17   Under the bystander theory, "a plaintiff seeks to recover damages as a percipient witness to the

18   injury of another."  *Id*.  "In contrast, the label direct victim arose to distinguish cases in which

19   damages for serious emotional distress are sought as a result of a breach of duty owed the plaintiff

20   that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out

21   of a relationship between the two."  *Id*. at 491 (internal quotation marks and citation omitted).  In

22   direct victim cases, "well-settled principles of negligence are invoked to determine whether all

23   elements of a cause of action, including duty, are present in a given case."  *Id*.  Lenk has not

24   identified any duty that was breached by Moving Parties' litigation of the prior actions Lenk

25   brought against them.

26   The motion to dismiss is GRANTED as to Claim 5 for failure to state a claim.

27                   **e.    Statute of Limitations**

28   Moving parties contend that all claims in the complaint are barred by the applicable statute

of limitations.

### i.  Claim 1 – Title VII

Moving Parties argue that Claim 1, asserting violation of Title VII, is time-barred because Lenk did not file suit within ninety days after receiving his right to sue letter on the EEOC charge. *See Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1121-22 (9th Cir. 2007) (Title VII action must be commenced within ninety days of issuance of the right to sue letter).  Moving Parties point to Lenk's allegation that he received a right to sue letter on EEOC Charge No. 556-2013-00779 on March 2, 2016.  Compl. ¶ 21.  Lenk filed the present lawsuit two years later, on March 26, 2018.  As discussed above, Lenk alleges that EEOC Charge No. 556-2013-00779 and the subsequent March 2, 2016 right to sue letter formed the basis of his Title VII claim asserted in *Lenk II*.  With respect to EEOC Charge No. 556-2018-00122, upon which the present Title VII claim is based, *see* Compl. ¶ 80, neither the charge nor the right to sue letter has been provided to the Court.  Consequently, the Court cannot tell whether the present Title VII claim was filed within the ninety-day period.

The motion to dismiss Claim 1 on statute of limitations grounds is DENIED.

### ii.  Claims 2, 3, and 4 – Civil Rights

Moving Parties argue that Lenk's claims asserted under 42 U.S.C. §§ 1981 (Claim 2), 1983 (Claim 3), and 1985 (Claim 4), are subject to the four-year statute of limitations set forth in 28 U.S.C. § 1658(a).  According to Moving Parties, all of Lenk's claims accrued at latest when he left MPS in March 2013, and Lenk did not file the present complaint until more than four years later on March 26, 2018.  Moving Parties assert that Claims 2, 3, and 4 therefore are subject to dismissal as time-barred.

As an initial matter, while the statute of limitations for the § 1981 claim is four years, the statute of limitations for the § 1983 and 1985(3) claims is two years.  *See Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369 (2004) (statute of limitations for § 1981 claims is four years); *Delacruz v. State Bar of California*, No. 16-CV-06858-BLF, 2018 WL 3077750, at *15 (N.D. Cal. Mar. 12, 2018) ("In California, the statute of limitations is two years for §§ 1983, 1985(3) claims.").  Moreover, because these claims are based in part on Defendants' litigation conduct, they did not

accrue when Lenk left MPS but rather when the underlying litigation terminated.  Judgment was entered in *Lenk II* on July 14, 2017.  Lenk filed the present action less than two years later, on March 26, 2018.  Accordingly, Moving Parties have failed to show that civil rights claims are time-barred.

The motion to dismiss Claims 2, 3, and 4 on statute of limitations grounds is DENIED.

### iii.        Emotional Distress

The statute of limitations for both intentional and negligent infliction of emotional distress is two years.  *See* Cal. Civ. Proc. Code §§ 335.1.  The emotion distress claim is based on litigation conduct that concluded with the judgment in *Lenk II* on July 14, 2017.  Lenk filed the present action less than two years later, on March 26, 2018.

The motion to dismiss Claim 5 on statute of limitations grounds is DENIED.

### f.        Sciammas

Moving Parties argue that Sciammas, who is named in Claims 2-5, is not a proper party to these claims.  They base their argument on the assertion that a manager is not individually liable for retaliation under Title VII.  *See Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir.1993) (Individual defendants cannot be held liable for damages under Title VII.).  While that is true, Lenk has not named Sciammas in his Title VII claim, Claim 1.  The authorities cited by Moving Parties do not speak to Sciammas' potential liability for civil rights violations or infliction of emotional distress.

The motion to dismiss Sciammas on the ground that he cannot be sued individually is DENIED.

### g.        Dismissal Without Leave to Amend

In summary, while not all of the grounds for dismissal asserted by Moving Parties are meritorious, Moving Parties have demonstrated that all five claims in the complaint are subject to dismissal.  The Court next must decide whether leave to amend is warranted.  Leave ordinarily must be granted unless one or more of the following factors is present:  (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment.  *Foman v. Davis*, 371 U.S. 178,

182 (1962); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (discussing *Foman* factors).

The Court finds no undue delay (factor 1). Lenk's insistence on continuing to allege constructive discharge in the face of two adverse judgments smacks of bad faith (factor 2), but the Court is not prepared to deny leave to amend on that basis at this time. This is the first motion to dismiss brought in this case, so Lenk has not repeatedly failed to cure deficiencies in his pleading (factor 3).

Forcing Defendants to litigate patently meritless claims arising out of Lenk's 2013 separation from employment, and Defendants' successful defense of lawsuits regarding that separation, would impose undue prejudice on Defendants (factor 4). Lenk's alleged constructive discharge occurred in March 2013. Judgment in *Lenk I* was entered in 2016, and Judgment in *Lenk II* was entered in 2017, and affirmed by the Ninth Circuit. Requiring Defendants to continue litigating issues arising out of those lawsuits would be pointless, particularly where Lenk's claims have no hope of viability, as discussed below.

Lenk's claims are so deficient and implausible that amendment would be futile (factor 5). To the extent Lenk's claims are grounded in his alleged constructive discharge, they are barred by collateral estoppel. *Cf. Lenk v. Monolithic Power Sys., Inc.*, 754 F. App'x at 556 ("The district court properly dismissed Lenk's action on the basis of claim preclusion because the claims were raised or could have been raised in a prior action between the parties or those in privity with them, and the prior action resulted in a final judgment on the merits."). To the extent his claims are grounded in post-discharge litigation conduct, Lenk has not alleged any facts suggesting that Defendant's conduct in defending against lawsuits *brought by Lenk*, which were adjudicated to be meritless, was motivated by a retaliatory or discriminatory animus (Claims 1-4) or was so unwarranted as to render Defendants liable for infliction of emotional distress (Claim 5). No amendment could cure the implausibility of Lenk's claims.

In determining that amendment would be futile, the Court has considered the Proposed FAC submitted by Lenk. The Propose FAC adds allegations regarding alleged retaliation and harassment during Lenk's employment at MPS and culminating in his alleged constructive

United States District Court
Northern District of California

discharge. *See* Proposed FAC ¶¶ 10-75. As discussed above, Lenk is collaterally estopped from asserting in this lawsuit that he was constructively discharged from MPS. The Proposed FAC also adds additional detail to Lenk's theory that Defendants' conduct in defending against *Lenk I* and *Lenk II* was motivated by a retaliatory or discriminatory animus. *See* Proposed FAC ¶¶ 76-150. However, all of the alleged acts are those ordinarily taken in defending against a lawsuit, for example, declining to waive service of process, filing motions, and seeking a favorable judgment.

The Proposed FAC adds new allegations regarding the difficulty Lenk has experienced finding a job. He describes jobs for which he was qualified and applied, and speculates that he did not obtain employment because of negative information provided by MPS. *See Proposed FAC ¶¶ 159-170.* These new allegations regarding MPS's alleged transmittal of negative information appear to be unrelated to the claims in Lenk's complaint grounded in Defendants' alleged litigation conduct and contain no facts to support Lenk's speculation. Moreover, Lenk alleges that he has filed a new 2019 EEOC inquiry based on the transmittal of negative information and is awaiting an interview with the EEOC to complete his administrative complaint. *See* Proposed FAC ¶ 167. Accordingly, any claims based on these new allegations appear to be unripe.

Having reviewed Lenk's Proposed FAC, the Court concludes that the allegations contained therein do not cure the deficiencies identified in this order or suggest that allowing leave to amend could result in a viable claim. Accordingly, Moving Parties' motion to dismiss the complaint is GRANTED WITHOUT LEAVE TO AMEND.

### B. Motion for Leave to Amend

As discussed above, Lenk's Proposed FAC not only adds allegations to his existing Claims 1-5, but also adds a claim for RICO violations, a claim for negligence and unjust enrichment, and a new section titled "Exemplary Damages." *See* Proposed FAC, ECF 52. The Court considers whether leave to amend is warranted. Lenk's motion is governed by Federal Rule of Civil Procedure 15(a), which provides that "[t]he court should freely give leave when justice so requires." Leave to amend "is properly denied, however, if amendment would be futile." *Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). Lenk's proposed amendments would be futile.

In proposed Claim 6, Lenk alleges that MPS, Sciammas, and SRC committed RICO violations. "The RICO statute sets out four elements for a primary violation: a defendant must participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). "In addition, the conduct must be (5) the proximate cause of harm to the victim." *Id.* "To show the existence of an enterprise under the second element, plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Id.* "Racketeering activity, the fourth element, requires predicate acts," often mail and wire fraud. *Id.* "The mail and wire fraud statutes are identical except for the particular method used to disseminate the fraud, and contain three elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." *Id.*

Lenk asserts conclusorily that Defendants' litigation conduct constituted predicate acts of extortion, mail fraud, and wire fraud. Proposed FAC ¶ 309. However, he alleges no facts supporting that characterization. For example, Lenk alleges that MPS's counsel in *Lenk II* wrote an email to Lenk stating that the fees and costs incurred in defending the action exceeded $85,000 and inquiring whether Lenk was willing to pay those attorneys' fees. Proposed FAC ¶ 286. Lenk's characterization of this communication as extortion is wholly implausible. His characterization of the filing of documents in *Lenk II* as mail fraud is equally implausible. *Cf. Crescenzo 1, L.P. v. Deutche Bank Nat'l Tr. Co.*, No. 3:17-CV-1018-CAB-JLB, 2017 WL 3732013, at *5 (S.D. Cal. Aug. 30, 2017) ("[C]laims that defendants threatened and initiated foreclosure are nothing more than conduct undertaken in the ordinary course of business or litigation and cannot be fairly characterized as extortion that is independently wrongful under RICO." (internal quotation marks and citation omitted)). Allowing amendment to add the proposed RICO claim thus would be futile.

Defendants argue that the proposed RICO claim is barred by California's litigation privilege, Cal. Civ. Code § 47(b). California's litigation privilege does not apply to federal

claims. *See Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n. 10 (9th Cir. 1992) (holding that state privileges apply only to state law claims); *Richards v. Cty. of Los Angeles*, No. CV 17-400 BRO (AGRX), 2017 WL 7411159, at *4 (C.D. Cal. Mar. 31, 2017) ("[T]he litigation privilege does not apply to RICO claims."). Accordingly, this argument is without merit.

Defendants also argue that the proposed RICO claim is barred by the *Noerr-Pennington* doctrine. "The *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of 'the right of the people . . . to petition the Government for a redress of grievances.'" *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (quoting U.S. Const. amend. I). "Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Id.* The doctrine has been held "to apply to defensive pleadings, because asking a court to deny one's opponent's petition is also a form of petition." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005). It thus appears that Lenk's proposed RICO claim based on Defendants' litigation conduct would be barred by the *Noerr-Pennington* doctrine.

Proposed Claim 7 is for negligence and unjust enrichment. "The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Salazar v. McDonald's Corp.*, 944 F.3d 1024, 1033 (9th Cir. 2019) (quoting *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333 (1998)). Lenk alleges "MPS has a legal duty to use due care and not interfere with Lenk's employment." Proposed FAC ¶ 317. However, he alleges no facts giving rise to such a duty or showing that Defendants' defense of lawsuits brought by Lenk would breach such a duty.

In Lenk's proposed new section of the pleading titled "Exemplary Damages," he alleges that Defendants acted with malice and oppression of his rights in violation of California law. Proposed FAC ¶¶ 368-82. It is not clear whether Lenk intends to assert a stand-alone claim for exemplary damages. Exemplary damages may be awarded as a remedy, but may not form the basis of a separate claim. *See Delman v. Entm't Partners Grp., Inc.*, No. CV 07-3423 PSG (CWX), 2008 WL 3914465, at *4 (C.D. Cal. Aug. 21, 2008). Under California law, exemplary damages may be awarded only if the plaintiff proves by clear and convincing evidence that the

24

defendant committed a tort with oppression, fraud, or malice. *See* Cal. Civ. Code § 3294(a).
California law "does not favor punitive damages and they should be granted with the greatest
caution." *Beck v. State Farm Mut. Auto. Ins. Co.*, 54 Cal.App.3d 347, 355 (1976). To recover
exemplary damages, a plaintiff must show that the defendant acted with intent or with conscious
disregard for the plaintiff's rights. *See* Cal. Civ. Code § 3294(c) (defining oppression, fraud, and
malice). Lenk has not alleged any viable theory of wrongful conduct on the part of Defendants, let
alone conduct with intent to harm Lenk or conscious disregard of his rights.

In conclusion, Lenk's proposed amendment would be futile. His motion for leave to
amend is DENIED.

**C.      Defendants' Request for Sanctions**

In their opposition to Lenk's motion for leave to amend, Defendants MPS and Sciammas
ask the Court to award sanctions against Lenk pursuant to Federal Rule of Civil Procedure 11. In
this district, a motion for sanctions must be separately filed and noticed for hearing. *See* Civ. L.R.
7-8. Accordingly, Defendants' request for sanctions is not properly before the Court and is not
addressed.

**III.    ORDER**

(1)      The motion to dismiss filed by Defendants MPS and Sciammas is GRANTED
WITHOUT LEAVE TO AMEND. MPS and Sciammas are DISMISSED from this
lawsuit;

(2)      Lenk's motion for leave to amend is DENIED;

(3)      The Clerk SHALL correct the docket to reflect that ECF 52 is a *Proposed* First
Amended Complaint;

(4)      Defendant SRC SHALL file a status report on or before February 24, 2020,
explaining its apparent failure to respond to the complaint; and

(5)      This order terminates ECF 31 and 51.

Dated:  February 10, 2020

_____
BETH LABSON FREEMAN
United States District Judge

25